UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH A. WINGO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:13 CV 299 |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Joseph A. Wingo, a *pro se* prisoner, filed a habeas petition under 28 U.S.C. § 2254 challenging a prison disciplinary proceeding. (DE# 1.) In MCF #12-11-0264, a hearing officer found Wingo guilty of assaulting staff, resulting in the loss of earned-time credits and other sanctions. (DE# 11-9.) The charge was initiated on November 25, 2012, when Officer C. Biddle wrote a conduct report stating as follows:

> On 11/25/2012 at approx. 0648 hrs. I C/O C. Biddle and C/O G. Kraning were passing out breakfast trays on the 300 range of SCU. As I C/O Biddle was standing in front of S-310 occupied by offender Wingo, Joseph #906484, I placed his food tray on the cuff port and took the lid off. As the lid was taken off of the tray Offender Wingo stated "my bread is missing." I then walked back to the tray cart and grabbed 2 pieces of bread off of another tray and then placed it on Offender Wingo's tray. As offender Wingo grabbed his tray and began to pull it into his cell he stated "I am Wingo" and threw the tray out of his cuff port striking me in the leg, food then splattered all over my arm and leg.

(DE# 11-1 at 1.) Photos of the officer after this incident were taken and were included with the conduct report. (*Id.* at 2-3.) On the same date, Officer G. Kraning submitted the following witness statement:

> On November 25th, at approx. 06:48, I, c/o Kraning was passing breakfast trays on the 300 range of SCU with c/o Biddle. I overheard an issue about bread going on with offender Wingo, Joseph, #906484 in cell #310. Shortly after that I turned around from where I was feeding and walked towards the situation to assist. I then saw c/o Biddle approaching offender Wingo's cuff port where the tray was sitting. Seconds after that c/o Biddle was in front of Wingo's cuff port waiting for him to take his tray. Offender Wingo then threw his breakfast tray with authority directly into c/o Biddle. Not only did the majority of the food go all over him, but the tray itself struck c/o Biddle in his leg, and the mid section of his body.

(DE# 11-2.) Officer M. Smith, who was working nearby during this incident, submitted the following statement:

> On / /12 [sic] I, C/O M[.] Smith, was working Special Control Unit pod. At approx. 0648 I heard Ofc Biddle call for Sgt. Aldredge. When I looked down the range (300) Ofd Wingo, Joseph # 906484 had thrown his breakfast tray on Ofc. Biddle. Ofd Wingo was placed in a shower cell to clean his cell S-307 out due to being placed on custody strip cell for assault on staff. I informed ofd Wingo I had his strip sack due to him being diabetic. Ofd Wingo was completely calm and nothing appeared to be wrong when Ofc Slabaugh and Ofc Hamrick placed him back into his cell. At that time he was given his strip cell sack.

(DE# 11-5.)

On December 4, 2012, Wingo was formally notified of the charge and given a copy of the conduct report. (DE# 11-1, DE# 11-3.) He pled not guilty, waived the 24-hour notice requirement, declined the assistance of a lay advocate, and did not request any physical evidence. (DE# 11-3.) He requested a witness statement from Nurse A. Neff, who he said would attest that he had "low blood sugar" and had "no idea what he was doing" during this incident. (*Id.*) He also requested a statement from Officer Smith

2

to attest that he "was going to feed in shower." (*Id.*) A statement was obtained from Nurse Neff, who stated:

> Offender Wingo alleges that his blood sugar was low on the date of alleged assualt [sic] – his blood sugar may have been low – but not likely to the point of altered behavior – It is rare to have low blood sugar cause ag[g]ression – He has had low blood sugars numerous times prior to this date with no ag[g]ression noted during any of these times.

(DE# 11-6.) In response to Wingo's witness request, Officer Smith completed the form stating as follows:

> On 11/25/12 @ approx 0648 I C/O M Smith was working Special Control Unit Pod. At this approx time Ofd Wingo, Joseph #906484 S-310 thru [sic] his tray on the front of Ofc C. Biddle. Due to ofd Wingo taking insulin I then ordered a strip cell sack for him. Ofd Wingo was placed into his cell at approx 0730 and did not appear to be having any medical issues, and was given his sack at this time.

(DE# 11-8.)

On December 17, 2012, the hearing officer conducted a hearing on the charge. (DE# 11-9.) Wingo did not make any statement, and instead the hearing officer noted that he "refused to participate." (*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) His administrative appeals were denied (DE# 11-10, DE# 11-11), and he thereafter filed this petition.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with

institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, the petition is somewhat difficult to decipher, but it is apparent that Wingo challenges the sufficiency of the evidence. In reviewing a disciplinary sanction for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). A habeas court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n* , 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence to support the hearing officer's determination that Wingo was guilty of assault. Officer Biddle reported that as he was handing out breakfast trays, Wingo became upset with him and threw his tray, striking

4

the officer in the leg and causing food to get all over his clothing. (DE# 11-1 at 1.) Two other officers submitted statements confirming that Wingo threw his tray at Officer Biddle. (DE# 11-2, DE# 11-5.) This is sufficient to establish that Wingo assaulted the officer. *See Hill*, 472 U.S. at 457 (evidence is sufficient as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination).

In the face of this evidence, Wingo does not offer an outright denial, nor did he at the hearing. Instead he suggests that he should not be held responsible for his conduct because he suffers from diabetes. (DE# 13.) In his view, Officer Biddle caused the entire incident by giving him the wrong breakfast tray. (*Id.*) Notably, the evidence Wingo requested (the statement from Nurse Neff) did not support his claim that his actions were caused by low blood sugar. Even if Wingo did not feel well or was in a bad mood, "inmates cannot be permitted to decide which orders they will obey, and when they will obey them[.]" *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). "When an inmate refuses to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials [which] . . . places the staff and other inmates in danger." *Id.* Wingo acknowledges that the officer ordered him to take the tray, and he was not entitled to throw his tray at the officer simply because he felt the officer was making a mistake. Moreover, the hearing officer was aware from the other witness statements

5

that Wingo was diabetic. He nevertheless concluded that Wingo was guilty of the offense, and it is not the province of this court to reweigh the evidence to determine Wingo's guilt or innocence. The question is solely whether there is some evidence to support the hearing officer's determination, and that standard is satisfied. Based on the record, Wingo has not established a due process violation.

Wingo next claims that he was denied the right to present exculpatory evidence. As the respondent points out, principles of exhaustion that apply to federal review of criminal convictions also apply to prison disciplinary proceedings. *See Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Markham v. Clark,* 978 F.2d 993, 994-95 (7th Cir. 1992). Before seeking federal habeas relief, a prisoner must take all available administrative appeals, and must raise in those appeals any issue on which he seeks federal review. *Eads*, 280 F.3d at 729. An inmate's failure to properly exhaust his claims in the state administrative process means the claims are procedurally defaulted. *Id.* Here, Wingo did not raise any claim about the denial of exculpatory evidence in his administrative appeals, and instead argued that he had not meant to hurt the officer. (*See* DE# 11-10 at 1.) He cannot raise a claim here that was not properly presented in the administrative process. *Eads*, 280 F.3d at 729.

Assuming *arguendo* the court could reach this claim on the merits, Wingo has not demonstrated an entitlement to habeas relief. A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to

6

witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

Here, the record shows that Wingo requested statements from Nurse Neff and Officer Smith at the time of screening, and those statements were obtained and considered. There is nothing to reflect that Wingo requested any other exculpatory evidence when he had the opportunity to do so, and he cannot fault the hearing officer for failing to consider evidence he did not properly request. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). Nor has he demonstrated prejudice. It appears he wanted to obtain statements from other medical staff about his diabetes. (DE# 13 at 2.) He claims that Nurse Neff did not know him as well as other medical staff, but Nurse Neff is the witness that *he* requested. Simply because his witness did not provide exculpatory evidence as he had hoped does not mean his rights were violated. Furthermore, there is no reason to believe obtaining statements from other medical staff would have had a

different outcome on the proceedings. As stated above, Wingo was not entitled to throw things at an officer even if he was feeling ill.

Wingo also asserts that he was denied photos of Officer Biddle. It is unclear what he is referring to since the photos were attached to the conduct report. (DE# 11-1.) In any event, the photos were not exculpatory, nor does he argue as much. Instead, he argues that the photos prove Officer Biddle gave him the wrong food tray, because the officer had oatmeal on his clothing and Wingo's diabetic food tray should not have included oatmeal. (DE# 13 at 2.) However, as already stated, the fact that the officer may have given Wingo the wrong breakfast tray does not exculpate him from the assault charge.

Wingo also mentions in passing that he wanted everyone involved to take a polygraph test. However, an inmate is not entitled to the creation of favorable evidence in a disciplinary proceeding. *See Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (prisoners are not entitled to polygraph tests in disciplinary hearings); *Hester v. McBride*, 966 F. Supp. 765, 773 (N.D. Ind. 1997) (inmate had no due process right to require witnesses to undergo polygraph tests in prison disciplinary proceeding). Wingo appears to have envisioned the hearing proceeding like a criminal trial, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. In short, Wingo has not demonstrated a due process error even if the court could consider his claim.

Finally, Wingo argues that the entire charge was false, and that it was filed only because Officer Biddle is related to a captain who works at the prison.* (DE# 1 at 4.) Such an argument is difficult to square with the record, particularly since Wingo does not dispute that he threw the tray. In any event, this claim does not entitle him to habeas relief. "[P]risoners are entitled to be free from arbitrary actions of prison officials." *McPherson*, 188 F.3d at 787. However, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *Id.* In other words, even if the charge was initiated for improper reasons, the protections to which Wingo was entitled are the protections afforded by *Wolff*. As explained above, Wingo has not demonstrated a violation of any of his *Wolff* rights.

For these reasons, the petition (DE# 1) is **DENIED**.

**SO ORDERED.**

Date: January 17, 2014

    s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

* Wingo attaches significance to the fact that Officer Smith submitted two statements, which he views as evidence that prison officials were manipulating the process. (DE# 1 at 4-5.) However, it appears that Officer Smith, like Officer Kraning, submitted an unsolicited witness statement at the time of the incident since he was present when it occurred.(DE# 11-5 at 1.) He then also completed the witness request form that was sent to him after Wingo was screened. (DE# 11-8.) There is nothing inconsistent about his two statements, nor does either statement exculpate Wingo.